Not For Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -
IN RE:                                              )    CASE NO.      11-32821 (LMW)
                                                    )
  WAYNE B. SHERMAN and                              )    CHAPTER       7
  GEORGIA B. SHERMAN,                               )
                                                    )    ECF NOS.      19, 25
               DEBTORS.                       )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -
TD BANK, N.A. fka TD BANKNORTH,  )
N.A. fka BANKNORTH, N.A., successor )
by merger to COMMERCE BANK, N.A., )
                                                    )
          MOVANT                                    )
                                                    )
     vs.                                              )
                                                    )
WAYNE B. SHERMAN,                                   )
GEORGIA B. SHERMAN and                              )
GEORGE I. ROUMELIOTIS, TRUSTEE,)
                                                    )
          RESPONDENTS.                              )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## APPEARANCES

Patrick J. Rosenberger, Esq.                       Attorney for Movant T.D. Bank N.A.
Shimkus, Murphy & Rosenberger, P.C.
382 New Britain Avenue
Hartford, CT 06106-3899

George I. Roumeliotis, Esq.                       Attorney for Objector/Respondent Trustee
Roumeliotis Law Group, P.C.
100 Pearl Street, 14th Floor
Hartford, CT 06103

Brian E. Kaligian, Esq.                                 Attorney for Debtors/Respondents
233 Boston Post Road
Orange, CT 06477

**MEMORANDUM OF DECISION AND ORDER**
**GRANTING MOTION RE: MOTION FOR RELIEF FROM STAY**

Lorraine Murphy Weil, Chief United States Bankruptcy Judge

The matter before the court is comprised of (a) TD Bank, N.A.'s (ultimate successor in interest to Commerce Bank, N.A., "TD Bank" or "Movant") Motion for Relief from Stay (ECF No. 19, the "R/S Motion") with respect to certain collateral (the "Vessel") owned by the above-referenced debtors (the "Debtors") and (b) the chapter 7 trustee's (the "Trustee") objection thereto (ECF No. 25, the "R/S Objection"). The sole issue raised in the R/S Objection is whether TD Bank's alleged security interest (the "Bank Security Interest") with respect to the Vessel is properly perfected under applicable nonbankruptcy law.

This court has jurisdiction over the above-referenced contested matter as a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and that certain Order dated September 21, 1984 of the District Court for this District (Daly, C.J.).[1] This memorandum constitutes the findings of fact and conclusions of law mandated by Rule 52 of the Federal Rules of Civil Procedure (made applicable here by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure).

**I.     THE POSITIONS OF THE PARTIES**

In the R/S Motion, TD Bank alleged that the Debtors were indebted to Commerce Bank, N.A. with respect to a certain promissory note. (*See* ECF No. 19 ¶ 1.) In the R/S Motion, TD Bank further alleged that it holds "a preferred ship mortgage" with respect to the Vessel pursuant to a certain "Consumer Security Agreement" executed and delivered by the Debtors to Commerce Bank,

---

[1] That order referred to the "Bankruptcy Judges for this District *inter alia*" all proceeding arising under Title 11, U.S.C., or arising in . . . a case under Title 11, U.S.C. . . . ."

- 2 -

N.A. and dated April 12, 2006. (*See id.*) In the R/S Motion, TD Bank further alleged that, to further secure the underlying indebtedness, the Debtors also gave Commerce Bank, N.A. a mortgage on the Vessel. (*See id.* ¶ 2.) A copy of the purported mortgage (the "Unrecorded Mortgage") is annexed to the R/S Motion.[2] In the R/S Motion, TD Bank further alleged that "[s]aid security interest was perfected by the filing of a UCC Financing Statement with the office of the Secretary of the State of Connecticut." (*Id.* ¶ 2.)[3] The R/S Motion seeks relief from stay to realize upon the Bank Security Interest "for cause, including a lack of adequate protection in the . . . [Vessel]" (*id.* ¶ 6) pursuant to 11 U.S.C. § 362(d)(1).

In the R/S Objection, the Trustee notes that the R/S Motion shows that the Vessel is subject to the Commercial Instruments and Maritime Liens Act (46 U.S.C. §§ 31301 *et seq.,* "CIMLA"). (*See* ECF No. 25 ¶ 3.) Accordingly, the Trustee argues, the Bank Security Interest cannot be perfected by the filing of a UCC-1 and "must be perfected [if at all] through . . . recordation . . . [of the relevant security instrument pursuant to CIMLA]. (*See id.* ¶ 3.)[4] The R/S Objection further alleges:

> The [R/S Motion] . . . provides no suggestion that . . . [TD Bank or its predecessor] has complied with the aforementioned requirements. Further, even the

---

[2] A more legible copy of the Unrecorded Mortgage is annexed to the Trustee Memorandum (as hereafter defined) as Exhibit F.

[3] The loan transaction is described with more particularity below.

[4] The foregoing is now not disputed by the parties. However, the Trustee points out that assignments of preferred ship mortgages also must be recorded in accordance with CIMLA. That point has not been addressed by the parties. However, it is well settled that "[r]egistry acts operate only on voluntary transfers by the parties and do not in general apply to transfers by act or operation of law." 70 Am. Jur. 2d *Shipping* § 169 (2012). Here, the Bank Security Interest transfers were effected by operation of law by the mergers detailed below. Accordingly, the transfers of the Bank Security Interest were not required to be recorded under CIMLA.

> UCC-1 Financing Statement that . . . [TD Bank] relies upon in . . . [the R/S Motion] as the demonstration that its security interest is perfected lapsed on April 24, 2011, over 6 months prior to the Petition Date (the undersigned's review of the records of the Secretary of the State of Connecticut confirms the non-existence of a continuation statement).
>
> Accordingly, the Trustee believes that the . . . [TD Bank's] security interest is not perfected. Therefore, due to the Trustee's status under 11 U.S.C. § 544, . . . [the Bank Security Interest] can be avoided by the Trustee and preserved for the benefit of the bankruptcy estate.
>
> As . . . [TD Bank's] security interest is not perfected, . . . [TD Bank] is not entitled to relief from the automatic stay.

(ECF No. 25 ¶¶ 4-6.)

In its Movant's Memorandum of Law in Support of Its Motion for Relief from Stay (ECF No. 61, the "Movant Memorandum"), TD Bank denies that its UCC-1 financing statement with respect to the Vessel has lapsed.[5] More importantly, attached to the Movant Memorandum is a copy of a second form of mortgage (the "Recorded Mortgage") and it is uncontested that such document was recorded with the NVDC (as hereafter defined). (*See* ECF No. 61 (Exhibit D to Affidavit in Support of Motion for Relief from Stay).)[6]

As the Trustee alleges in his Memorandum of Law in Support of Trustee's Objection to Motion for Relief from Stay (ECF No. 75, the "Trustee Memorandum"), the potential problem with the foregoing is that the Unrecorded Mortgage (and all the related loan documents) list "Commerce Bank, N.A." as "Lender" (*see* ECF No. 75 (Exhibits C, D ,F)), while the Recorded Mortgage lists

---

[5] As explained below, perfection of the Bank Security Interest in accordance with the CIMLA is the exclusive means by which perfection could have been effectuated. Accordingly, the lapse *vel non* of TD Bank's UCC-1 Financing Statement with respect to the Vessel is irrelevant.

[6] A more legible copy of the Recorded Mortgage is annexed to the Trustee Memorandum as Exhibit E.

"Commerce Bank/Shore, N.A." as "Lender" (*see id.* (Exhibit E)).  That discrepancy, the Trustee argues, prevents the Bank Security Interest from being perfected in accordance with CIMLA.  (*See id.* at 4-6.)  TD Bank argues that such discrepancy is not sufficient to render the Bank Security Interest unperfected, and that is the issue that the parties have presented to the court.

**II.    FACTS**[7]

On April 12, 2006, Commerce Bank, N.A. loaned to the Debtors the principal sum of $256,000.00 at a rate of interest of 7.25%.  The loan terms are reflected in a Promissory Note of even date.  As part of that transaction, the Debtors signed a Consumer Security Agreement dated April 12, 2006.  The lender was listed as "Commerce Bank, N.A."  The location of the lender was listed as Mid Shore Region, 1101 Hooper Avenue, CN-2050, Toms River, NJ 08754.  Within the Consumer Security Agreement, the Debtors agreed that a 1999 Sea Ray Express Bridge 450 (*i.e.,* the Vessel) would be granted to the lender as security for the loan.  The Debtors specifically granted the lender the authority to file a UCC-1 Financing Statement or, alternatively, a copy of the agreement to perfect the loan.

On April 12, 2006 the Debtors also signed a Preferred Ship Mortgage (*i.e.,* the Unrecorded Mortgage), which granted a security interest in the Vessel to the lender which was listed as "Commerce Bank, N.A."  The location of the lender was also listed as Mid Shore Region, 1101 Hooper Avenue, CN-2050, Toms River, NJ 08754.  At the time of the making of this loan, Commerce Bank, N.A. employed an outside vendor known as Atlantic Boat Documentation, Inc.

---

[7]    The following facts are taken from the Movant Memorandum and are not subject to material dispute.  (*See* ECF No. 75 at 1-2.)

Atlantic Boat Documentation, Inc. generated a duplicate[8] Preferred Ship Mortgage (*i.e.,* the Recorded Mortgage) for filing with the NVDC. The Document was signed at closing also on April 12, 2006 by the Debtors. That document was recorded with the NVDC on June 14, 2006.[9] Through inadvertence, the lender was listed on the Recorded Mortgage as Commerce Bank/Shore, N.A. with an address of 1101 Hooper Avenue, CN-2050, Toms River, N.J. 08754, the address of Commerce Bank, N.A. and that which was listed in the Unrecorded Mortgage. On April 12, 2006, Commerce Bank, N.A. was the successor in interest to, and held the assets of, Commerce Bank/Shore N.A., which had ceased to exist as of June 1, 2004 as a consequence of its merger into Commerce Bank, N.A.

On April 14, 2006, a UCC-1 Financing Statement was duly filed with the Office of the Secretary of State for Connecticut. The UCC filing lists the lender as Commerce Bank, N.A., 1101 Hooper Avenue, CN-2050, Toms River, NJ 08754. On March 14, 2011 a UCC Financing Statement Amendment was filed with the Office of the Secretary of State for Connecticut.

TD Bank is the current holder of the subject note and subject mortgage by its acquisition and merger of Commerce Bank, N.A. into TD Banknorth, National Association, which, upon the merger,

---

[8] If by "duplicate," the parties mean that (other than with respect to the name of the lender) the Unrecorded Mortgage and the Recorded Mortgage were identical in form, the court disagrees. The documents plainly were done on two different forms. For example, the Unrecorded Mortgage states that the "Governing Law" (to the extent not preempted by federal law) is provided by the State of Connecticut, and contains a "Definitions" section. The Recorded Mortgage states that the "Governing Law" (to the extent not preempted by federal law) is provided by the State of New Jersey and there is no "Definitions" section. There are other differences as well. However, the parties do not address the dissimilarity of the two forms (other than with respect to the name of the lender) and neither will the court.

[9] The Trustee speculates as to why there exist both a Recorded Mortgage and an Unrecorded Mortgage. (*See* ECF No. 75 at 5.) The court declines so to speculate.

resulted in the bank title of T.D. Bank, N.A. Prior to the Debtors' bankruptcy filing, the Debtors had been sending payments to TD Bank, N.A. under the loan. The Debtors have failed to pay the monthly pre-petition and post-petition installment payments for September 12, 2011 through March 12, 2012. As of March 27, 2012 the debt due and owing to TD Bank is as follows:

| | |
|---|---|
| Principal | $223,426.77 |
| Interest to 3/27/2012 (7.25%) | $8,118.37 |
| Late Fees | $2,093.50 |
| Storage Fees | $6,768.31 |
| TOTAL: | $240,406.95 |

At the time of the filing of the R/S Motion, the Vessel had an average retail value of $174,300.00 pursuant to the NADA value attached to the Movant Memorandum. (*See* ECF No. 61 (Exhibit I to Affidavit in Support of Motion for Relief from Stay).)

"The Trustee is largely in agreement with the facts as set forth in the 'Statement of Facts' Section in the . . . [Movant] Memorandum" (ECF No. 75 at 1-2), but supplemented such Statement of Facts as follows. The Vessel is a 1999 Sea Ray Express Bridge 450 boat. The Vessel is now called the "Misty," but was originally named the "Willie Mack" when it was issued an official number of 1181419 by the United States Coast Guard. It is over 45 feet long and has a gross tonnage of 32 tons. Its size is such that it is required to be documented through the Coast Guard's National Vessel Documentation Center ("NVDC"). Attached to the Trustee Memorandum as Exhibit "A" is an Abstract of Title obtained by the Trustee from the NVDC showing the chain of title of the Vessel, and also listing the lien that is the subject of this litigation. Attached to the Trustee Memorandum as Exhibit "B" is a copy of the original Certificate of Documentation issued by the NVDC on the Vessel. (*Id*. at 2.) The Trustee submits with the Trustee Memorandum as exhibits the following

documents that were signed by the Debtors in connection with their financing of the Vessel: Exhibit "C"—Promissory Note signed in favor of Commerce Bank, N.A.; Exhibit "D"—Consumer Security Agreement between the Debtors and Commerce Bank, N.A.; Exhibit "E"— Preferred Ship Mortgage granted in favor of Commerce Bank/Shore, N.A. which was recorded with the NVDC (*i.e.,* the Recorded Mortgage); and Exhibit "F"—Preferred Ship Mortgage granted in favor of Commerce Bank, N.A. (*i.e.,* the Unrecorded Mortgage which was not recorded or registered anywhere).

### III. PROCEDURE

Ordinarily, a perfection issue such as this would not be adjudicated in the context of relief from stay proceedings. Rather, the chapter 7 trustee would be required to commence an adversary proceeding to adjudicate the merits of the perfection issue (and any other issues under chapter 5 of the United States Bankruptcy Code). *See Fed. Nat'l Mortg. Assoc. v. Fitzgerald (In re Fitzgerald),* 237 B.R. 252, 259-60 (Bankr. D. Conn. 1999). Here, however, the parties proceeded on stipulated facts and exhibits and requested the court to adjudicate the perfection issue in the context of this contested matter. (*See* Oral Record of 5/17/2012 Hearing at 10:13:18 *et seq.*) Under those circumstances, the court believes that it has the discretion so to adjudicate the perfection issue in the context of this contested matter, and does so below.

### IV. ANALYSIS

#### A. Applicable Law

As noted above, the Vessel has been documented through the NVDC under the provisions of 46 U.S.C. §§ 12101 *et seq.*, and is therefore deemed a "documented vessel" under 46 U.S.C. §106. In order for a lender to maintain and perfect a security interest in a documented vessel, it must comply with CIMLA by recording an appropriate preferred ship mortgage. State laws concerning

the perfection of personal property (such as the Uniform Commercial Code or certificate of title laws) have no applicability to documented vessels. *See Sattler v. Shallow (In re Shallow)*, 393 B.R. 277, 285 (Bankr. D. Conn. 2008) (Krechevsky, J.) ("[P]erfection of a security interest in a federally documented vessel is determined by federal, not state, law."). *See also Maryland Nat'l Bank v. The Vessel Madam Chapel*, 46 F.3d 895, 900 (9th Cir. 1995); *In re Alberto*, 823 F.2d 712, 715-16 (3rd Cir. 1987). Furthermore, Article 9 of the Uniform Commercial Code as enacted in Connecticut makes it clear that Article 9 does not apply "to the extent that . . . [a] statute, regulation or treaty of the United States preempts this article." Conn. Gen. Stat. Ann. §42a-9-109(c)(1) (West 2012).[10]

> CIMLA (codified in title 46 of the United States Code) provides in relevant part as follows:
>
> (a)(1) A bill of sale, conveyance, mortgage, assignment, or related instrument, whenever made, that includes any part of a documented vessel or a vessel for which an application for documentation is filed, must be filed with the Secretary to be valid, to the extent the vessel is involved, against any person except–
>
>> (A) the grantor, mortgagor, or assignor;
>>
>> (B) the heir or devisee of the grantor, mortgagor, or assignor; and
>>
>> (C) a person having actual notice of the sale, conveyance, mortgage, assignment, or related instrument.
>
> (2) Each bill of sale, conveyance, mortgage, assignment, or related instrument that is filed in substantial compliance with this section is valid against any person from the time it is filed with the Secretary.
>
> (3) The parties to an instrument or an application for documentation shall use diligence to ensure that the parts of the instrument or application for which they are responsible are in substantial compliance with the filing and documentation requirements . . . .

---

[10] New Jersey law is to the same effect. *See* N.J. Stat. Ann. § 12A:9-109(c)(1). Thus, as alluded to above, the filing of the UCC-1 is irrelevant for these purposes.

(b) To be filed, a bill of sale, conveyance, mortgage, assignment, or related instrument must–

   (1) identify the vessel;

   (2) state the name and address of each party to the instrument;

   (3) state, if a mortgage, the amount of the direct or contingent obligations (in one or more units of account as agreed to by the parties) that is or may become secured by the mortgage, excluding interest, expenses, and fees;

   (4) state the interest of the grantor, mortgagor, or assignor in the vessel;

   (5) state the interest sold, conveyed, mortgaged, or assigned; and

   (6) be signed and acknowledged . . . .

46 U.S.C.A. § 31321 (West 2012).[11]

A lien is "perfected" if the lien would have priority over subsequent judicial lien creditors (including the trustee in his Bankruptcy Code § 544(a)(1) capacity). *See Montano Cigarette, Candy & Tobacco, Inc. v. Shivani (In re Shivani),* No. 03-30930, 2004 WL 484549, at *3 n. 11 (Bankr. D. Conn. Mar. 11, 2004).[12] Accordingly, a ship mortgage is perfected if it is filed in "substantial

---

[11]   The only noncompliance with Section 31321 alleged by the Trustee is with respect to the name of the mortgagee.

[12]   Section 544 provides in relevant part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by–

   (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists . . . .

11 U.S.C.A. § 544 (West 2012)

compliance" with Section 31321. *See* 46 U.S.C.A. § 31321(a)(2) (West 2012) ("Each . . . mortgage . . . that is filed in *substantial compliance* with this section is valid against any person from the time it is filed with the Secretary." (emphasis added)); 46 U.S.C.A. § 31322(a) (West 2012) ("A preferred mortgage is a mortgage, whenever made, that . . . is filed in *substantial compliance* with section 31321 of this title. . . ." (emphasis added)). *See also* 46 U.S.C.A. § 31326(b)(1) ("[T]he preferred mortgage lien . . . has priority over all claims against the vessel (except for expenses and fees allowed by the court, costs imposed by the court, and preferred maritime liens . . . .").[13]

"Section 31321(a)(2) of title 46 . . . codifies the 'substantial compliance' standard previously found [in the case law developed under the now-repealed Ship Mortgage Act of 1920]." David M. Williams, *Yacht Financing After Public Law 100-710: The Ship Mortgage and State Law Liens,* 48 Consumer Fin. L.Q. Rep. 128, 130 (Spring 1994). "Substantial compliance" within the purview of CIMLA means that "lenders will not lose the benefit of their security for minor or technical errors," 1 *Admiralty & Mar Law* § 9-5 (5th ed. 2011). "Substantial compliance" is achieved if "prospective creditors could learn of the pre-existing mortgage lien with reasonable effort." *Alberto,* 823 F.2d at 719 (case decided under Ship Mortgage Act of 1920).[14]

---

[13] The Trustee's hypothetical judicial lien is not a lien with priority over a "preferred mortgage."

[14] Section 31321(a)(3)'s admonition that "the parties . . . shall use diligence to ensure that . . . the instrument . . . [is] in substantial compliance with the filing and documentation requirements [of title 46]" is not an additional perfection requirement but, rather, simply makes clear that the responsibility of assuring "substantial compliance" is placed on the parties and not on the recording authority. *Facsimile Filing of Instruments*, 60 Fed. Reg. 40,238, at *40,239, 1995 WL 460796 (Aug. 7, 1995) (codified at 46 C.F.R. § 67.219) ("This placement of the burden of accuracy and completeness on the parties to the instrument was designed to remove the burden from the Coast Guard to carefully check each element of an instrument presented for filing to ensure that it was authentic. Therefore, the scope of the Coast Guard's responsibility regarding the acceptance of an instrument for filing is more of a ministerial function than a quality assurance function.").

The parties have not cited, and the court has not located, any authority specifically dealing with how CIMLA's "substantial compliance" standard applies to mistakes in the name of the grantee. However, "[i]t is the general rule that in the case of a misnomer of a corporation in a grant . . . , if there is enough expressed to show that there is such an artificial being and to distinguish it from all others, the corporation is sufficiently named although there is a variation of words and symbols." *Wyandot, Inc. v. Gracey St. Popcorn Co., Inc.,* 208 Conn. 248, 255 (1988) (citations and internal quotation marks omitted).[15]

### B.    Application of Law to Fact

In a 2006, Commerce Bank, N.A. (or its agent) mistakenly named Commerce Bank, N.A.'s similarly named predecessor in interest, Commerce Bank/Shore, N.A., as "lender" in the Recorded Mortgage. It is true that Commerce Bank/Shore, N.A. did not exist in 2006 because of its 2004 merger into Commerce Bank, N.A. However, the two "Commerce Bank" names are sufficiently similar to indicate that *some* "Commerce Bank" entity located at 1101 Hooper Avenue, CN-2050, Toms River, NJ 08754 was intended to be named as "lender." The 2004 merger would have been uncovered by an electronic search. That information would have confirmed that the only entity a reference to "Commerce Bank/Shore, N.A." at that address could have meant in 2006 was to the then-surviving entity, Commerce Bank, N.A.[16] Therefore, the Recorded Mortgage substantially

---

[15]    The court cites to *Wyandot* not because Connecticut (or any other state) law governs (it does not) but, rather, because the court finds the above-quoted language to be a persuasive statement of the law.

[16]    The subsequent mergers of Commerce Bank, N.A. into TD Banknorth, National Association and that entity into TD Bank also would have been uncovered by an electronic search.

complied with Section 31321 and, accordingly, the Bank Security Interest was "perfected" for Section 544(a) purposes.

The Trustee argues that "[t]he law is clear . . . that when there is a dispute between two competing lienholders, notice is irrelevant–a creditor must comply with applicable nonbankruptcy law to achieve perfection of its lien." (ECF No. 75 at 6.) That statement may be true as far as it goes, but it ignores the fact that TD Bank here argues that the Bank Security Interest *was* perfected under the "substantial compliance" standard of Section 31321; accordingly, notice is relevant to the extent that it is an element (*e.g.,* inquiry notice) of Section 31321's "substantial compliance" standard. *Cf. Maloney v. American Nat'l Bank (In re Terkeltaub),* 117 B.R. 47, 49 n. 2 (Bankr. D. Conn. 1990) (Shiff, J.) ("It is necessary to look at state law to determine whether constructive notice will impair the trustee's avoiding powers as a hypothetical lien creditor.").

### V.   RELIEF FROM STAY

The sole defense raised by the Trustee to the R/S Motion is an alleged non-perfection of the Bank Security Interest. As explained above, the court concludes that the Bank Security Interest was perfected under CIMLA. Furthermore, the affidavit annexed to the Movant Memorandum makes out a *prima facie* case of "cause" under 11 U.S.C. § 362(d). Accordingly, TD Bank is entitled to the relief it seeks.

### IV.   CONCLUSION

For the reasons set forth above, (a) the R/S Motion is granted and the R/S Objection is overruled, and (b) the automatic stay in this case is modified to the extent necessary to permit TD

Bank to exercise its rights and remedies under applicable nonbankruptcy law with respect to the Vessel.[17]

It is **SO ORDERED**.

Dated: June 12, 2012                              BY THE COURT

*Lorraine Murphy Weil*
Lorraine Murphy Weil
Chief United States Bankruptcy Judge

---

[17] The court has considered the Trustee's remaining arguments and finds them to be inapposite or otherwise unpersuasive. Because of the court's finding that the Bank Security Interest was perfected under CIMLA, the court does not reach TD Bank's other arguments.